May I have Owners Insurance Company v. Walsh and Mr. Wachula? Good morning, Your Honor. May I please escort? Good morning. Please. I'm Stephen Wachula from Florence, South Carolina. Thank you for hearing from me today on behalf of the Walsh family. This matter arises from a tragic automobile accident that occurred when Mr. Walsh, who was operating a lawnmower, was struck by a vehicle that was traveling, I think, in excess of 130 miles an hour, causing his death. Mr. Walsh and owners agrees, the plaintiff actually agrees, that they insured a defendant with underinsured motorist policies, insuring two vehicles, a Cadillac and a Ford F-150. And they also don't dispute that owners under that contract is legally responsible to pay for damages that the Walsh estate is legally entitled to recover against the underinsured driver that struck him, whether Mr. Walsh was occupying any of those vehicles or not. Owners pay the coverage on only one of those vehicles. So the question before the court, as it so often is, I'm afraid, is this issue of stacking. South Carolina has been very clear on the point that stacking is presumed, that is to say, an insurer's right to recover on the coverage under more than one vehicle is presumed, absent an explicit and unambiguous policy provision prohibiting it. The estate argues that the district court and defendants flip that concept on its head and instead require the insured to show an explicit policy provision that requires stacking. And this is the essence of this dispute, I would contend. South Carolina law, Rupi in particular, but we cite numerous cases that make this point, presumes stacking on the concept that the insured paid the premium, bought this coverage. The presumption is the insured is entitled to that coverage, where, of course, you can show that there's an underinsured driver that caused damages and excess policy limits. None of that's in dispute here. The question is, is there an explicit policy provision that prohibits stacking? Now, this issue sometimes gets clouded in the minds of practitioners, I will concede, and the courts, perhaps, because South Carolina law actually prohibits exclusions on stacking in certain situations. And there are voluminous case law in South Carolina under what circumstances a policy may not prohibit stacking. And, frankly, oftentimes practitioners assume that the policy excludes stacking to the extent that South Carolina law would allow. And so we just learned these mandatory minimum stacking requirements and we assume that the policy excludes to the extent the law would allow. However, it's always incumbent upon practitioners to read the policy. This is the contract between the parties, and particularly where, Your Honor, as here, there are somewhat unusual facts. What significance do you attach to the fact that the accident here did not involve a covered vehicle or a scheduled vehicle? Yes, Your Honor. Well, I think there is significance there, Your Honor, in the sense that because Mr. Walsh was not occupying a covered vehicle, by South Carolina law, the policy could have excluded stacking. That's significant, Your Honor. The point I'm making is it did not. And if it had, it must do so clearly, explicitly, and unambiguously. Otherwise, South Carolina presumes stacking. And had I not read the policy, had I assumed that the policy excluded stacking to the extent that the law would allow, we wouldn't be here. How do you not read the Section 4B to be anti-stacking statute or policy? To the point, Judge Yoon, none of the other exclusions apply, and they have to do with the nature of how automobiles are defined and so forth. The defendants point to, now, this one Section 4B, found, as Your Honor points out, at JA 131 to 132. Consider 4B follows 4A. And 4A is the one limit that applies. I appreciate your question, Your Honor, and I promise I'm getting to it. 4A applies. 4A is the provision that says your coverage is limited to the extent of damages or the coverage that's listed in the declarations. That limit applies. The coverage limited in the declarations applies, and that coverage is $150,000 on two vehicles. I had the same question that Judge Yoon had, and that is, I don't think the fact that this was a non-covered vehicle, it doesn't rule out uninsured motorist coverage altogether. But what it does is it throws you into what, as far as I can see, is Class 2. The scheduled vehicles under the policy are a 1989 Cadillac and a 2008 Ford. And this was plainly not a covered vehicle. It doesn't rule out uninsured motorist coverage. You're entitled to recover. But the question is whether you should stack uninsured motorist coverage for a non-covered vehicle. Because I don't read South Carolina law as prohibiting or as mandating stacking. You yourself said it's at best a presumption. But I'm just wondering whether Section 4B is a permissible provision of an insurance policy. And I had the same question that Judge Yoon raised. Yes, Your Honor. And I think the answer is, if it is explicit and unambiguous limiting stacking, then it would be permissible under the law. The question Judge Yoon has is, how do you not read that as an explicit and ambiguous limitation? Well, let's read it. No limit of liability is increased because of the number of automobiles shown in the declarations. That the plaintiffs point to as an explicit and unambiguous limitation of the claimant's right to stack. No limit of liability. The only limit of liability that's at issue that applies that they point to is the declarations. No limit is increased. The defense doesn't seek to increase the limits beyond what's in the declarations. We seek precisely the coverage that's stated in the declarations for which we paid a premium. And then it goes on, except as provided in 4A above. Of course, 4A is the declarations. So 4B says, the defendants, the insured says, I'm entitled to the coverage that's stated in the declarations. Judge Wilkerson, you're quite right. I wouldn't argue that South Carolina law would prohibit an explicit limitation on stacking were there one. However, the insured says, I paid these premiums. Where is the explicit limitation? And the explicit limitation they provide is no limit of liability, the declarations, is increased. But we don't seek to increase it. We seek the limits that we paid the premiums for, $150,000 each on two vehicles. It's not increased because the number of automobiles. Don't you have to read, I mean, 4A includes this however clause. If the policy insures more than one, your automobile, which is the issue that B1 talks about, right? Yes, Judge Rushing. It shall not be increased if you have more than, based on the number of automobiles. And then they have this clause in 4A that talks about, it will be increased based on the number of automobiles if you fall into one of these categories. Well, I would say two things to that, Judge. The first is, recall, the presumption of South Carolina law is stacking. The purpose of the 4A presumption for covered vehicles. No, Your Honor. No, Your Honor. The presumption of South Carolina law is when one pays a premium for coverage under a vehicle and they suffer damages at the hands of an underinsured tort officer, they are entitled to that coverage. Judge Rushing had a question. Oh, I'm sorry, Judge. Judge, you point to the however section. And by the carrier's admission, none of these provisions of the however section apply. Right. So the policy says when there's more than one automobile in the declarations, these are the rules that will apply to governed stacking. None of them apply here. And then you have this sort of belt and suspenders that says, outside of 4A, no limit's going to be increased based on the number of automobiles. Your Honor, I would take exception with that. And remember, we must read these exclusions strictly. Nothing in the policy says you can only stack as in the 4A2 however section. Had that 4B said that, Judge Rushing, had 4B said you shall not stack, explicit and unambiguous, except as set out in the 4A2 however section, we wouldn't be here. But it doesn't have that explicit and unambiguous limitation on stack. So you don't read the language that says the number of automobiles won't increase the limits outside of the provisions of 4A. You don't read that to say you cannot stack the two automobiles together outside of 4A. No, Your Honor. What does that mean otherwise? What does it say? No limit is increased because the number of automobiles shown in the declarations except as in 4A. Well, the first limit in 4A is the coverage on two separate automobiles of 100 body injury and $50,000 property damage. If there was nothing else in the policy, stock and auto law says the insurer is entitled to the coverage on both those vehicles. So then where is the explicit limitation? The however section has four sections. None of them apply. None of those limits apply. 4B says no limit that we've talked about so far is increased. Well, no limit outside of that. I have to say intuitively, I hear your argument, but intuitively it seems to me a rather rough thing to not only give uninsured motorist coverage, which I think the insurance company is perfectly willing to do, but to provide for stacking of uninsured motorist coverage when an individual is sadly injured, not in a covered vehicle but in a lawnmower, and to provide stacking for a non-covered vehicle intuitively seems to me a heavy blow, and the combination of section 4A and 4B do not seem to me to go in your direction. I understand, Your Honor. But absent our intuitions, what South Carolina law tells us is this. When a South Carolina insured pays a premium for an underinsured policy, whether they are in the car that's insuring or not, they are entitled to that coverage, and the presumption is they can have that coverage on each of the vehicles they purchase coverage on. But under South Carolina law, a lawnmower is not a vehicle. Yes. So how would that presumption apply? Well, what South Carolina law says is look to the policy, right? And first of all, even if the insured had been in no vehicle, no automobile and no vehicle, they would be entitled to underinsured coverage. Had he been a pedestrian and been struck by the driver, he'd be entitled to underinsured coverage, and he would be entitled to the coverage on each policy, absent an explicit and ambiguous limitation. At the end of the day, the courts ---- So remind me again, where are you getting this principle of South Carolina law that for a Class 2 insured, they are presumed to stack unless their policy says more than normal policy language about stacking? And this is the essential question, Judge Rush. If you read Rupee v. Auto Owners, it's that case and several others saying the same thing recited in my brief, page 19. Stacking of additional coverage for which the insured contracted is permitted unless limited by statute or a valid policy provision. Okay, so you're turning permitted into presumed? Well, Your Honor, they tell us unless there's a statute or policy provision that says you can't stack, you can. You can, right, but it doesn't tell us how to read a policy. It doesn't tell us. South Carolina presumes that you're stacking for a Class 2 insured unless the policy says something more than nothing about stacking. No, quite the contrary, Your Honor. Permit me to disagree. South Carolina law says you get to stack unless ---- and it does tell us how to read a policy ---- with a clear, unambiguous, and explicit exclusion. And if this court concludes that the reverse is true, that the insured must show an explicit provision that allows stacking because of our intuition that you shouldn't be able to get multiple vehicles if you weren't involved in the accident, you will have stood South Carolina law in precedent, which I cite you on numerous occasions. Just to check, so that's your best authorities for a presumption? Your Honor, I would point you to page 19 of my brief that cites Rupi and half a dozen other South Carolina cases that say repeatedly, you may stack absent an explicit and unequivocal exclusion. This court can only conclude in light of that precedent that the insured cannot stack if they find the contents of 4B to be explicit and unambiguous. Thank you. Judge, do you have anything? Sorry for going over so fast. Okay. Thank you. All right, we're pleased to hear from you. Ms. Bair? Good morning, and may it please the Court. My name is Laura Bair, and I, along with my co-counsel, Mary LaFave, represent Oner's Insurance Company. The district court properly granted summary judgment to Oner's because stacking of underinsured motorist coverage was not provided for by South Carolina statute or by the terms of the policy where the insured was operating a riding lawnmower. There are two ways for an insured to stack under South Carolina law. One is for the statute to provide for it, and the other is to contract for additional coverage under your policy in addition to the minimum coverage provided by statute. Contrary to appellant's contention, there is not a presumption in South Carolina law that an insured may stack UIM coverage. South Carolina law characterizes a driver as either a Class I or a Class II insured with respect to the absent. Only Class I insureds can stack. Class II insureds can port their coverage on one vehicle. It was in compliance with South Carolina statutory law and the terms of our policy, which are consistent with statutory law, that we provided for portability of the coverage under one vehicle. The statute governing portability is SC Code 3877-160. If the insured has a vehicle in the accident, they are entitled to port and stack their UIM coverage, but only to the extent of the coverage on the vehicle involved in the accident. Here, there wasn't a vehicle involved in the accident under state statute because a lawnmower is not considered a vehicle under the statutory definition. Can I ask you about that? Yes, of course. This is probably not relevant to resolving the case, but the statute doesn't actually define vehicle. The definition is for motor vehicle, and other statutes use motor vehicle consistently. But this one just says vehicle, not motor vehicle. Is there a difference? Does it matter under South Carolina law? I could not find any South Carolina law telling me why one is a vehicle and one is a motor vehicle. But the statutory, the defined term is not used here. And do you know what that means or if there's a difference? Yes, Your Honor. I'm not sure as to why they use motor vehicle in some places and vehicle in others, but I would point the court to the Anderson case that's cited in our brief from the South Carolina Supreme Court, which was interpreting what vehicle meant under the uninsured motorist statute and determined that it meant a vehicle that is primarily designed for use on the highway. And so in the Anderson case, they found that a tractor was not primarily designed for use on the highway, and so it did not fall within the uninsured motorist coverage statute.  We've got a lot of definitions happening here. Yes, we do. The lawnmower is an automobile under this gentleman's policy, but it's not a motor vehicle under South Carolina law, and it may or may not be a vehicle under this other provision, which, again, I just raise it because I'm interested. It may not matter, but I wanted to see if you knew why there was a difference. I don't know why there's a difference, but I know that the Anderson court looked to the definition of vehicle under the statute. I'm sorry, motor vehicle under the statute determined what vehicle meant in the uninsured motorist statute. I think that might have been uninsured, where they used motor vehicle instead of vehicle. And for purposes of statutory interpretation, we're looking at the statutory definition. So the policy definition of automobile doesn't then get read into the statute. First, you have to determine what coverage is provided by the statute, and then you look to the policy to determine if it provides any additional coverage beyond that. So turning to the policy here, the question is whether it provides additional coverage, and state courts and federal courts applying South Carolina substantive law have all found that an insured is free to contract for additional coverage, but they have to do so by specific terms, and a specific intention that's expressed in the policy that we're providing more coverage than what's provided by statute. And here, I've looked at the cases cited in the brief, the cases cited within those cases, and the courts consistently look to the policy terms, and they have repeatedly found that no terms reflected the intent to contract for additional UIM benefits, except in some exceptional circumstances. Putnam is one of the cases that found that, yes, sure, you can contract for more, but you didn't here. Booth is another case where the court said, yes, you can contract for additional coverage beyond the statute, but you didn't do that here. So turning now to the owner's policy, Section 2 of the UIM coverage form is what provides for portability. We say that if you have damages that exceed what the uninsured, or I'm sorry, in this case, underinsured motorist provides under their policy, then we will provide benefits. But Section 4 is what sets forth a limit on stacking. And so it's Section 4B, the provision that says that no limit of liability is increased because of the number of automobiles shown in the declarations, except as provided in 4A above, is our anti-stacking provision. And the district court properly found that that term of the policy was both explicit and unambiguous. There are two exceptions in 4A that permit stacking. One is for your scheduled auto. We're in agreement that that does not apply because there are only two scheduled autos under this policy. There's the Cadillac and the Ford F-150. The lawnmower is not a scheduled auto. The second provision that allows for stacking is 4A.3. That allows you to stack where you have a vehicle that's not one of your scheduled autos, but it is subject to another automobile policy on which you have UIM coverage. Would the result in this case be quite different if this were a covered vehicle rather than a lawnmower? Absolutely. Absolutely. If it were a covered vehicle, you would be entitled to stack. You're not trying to maneuver us into a broad anti-stacking pronouncement? Absolutely not. Absolutely not. Because the South Carolina law wouldn't be with you. No, it would not. And if our policy didn't allow that, then our policy would be in contravention to South Carolina statute. I mean, to just put it in simple terms, it's crucial that the accident here involved a lawnmower and not a 1989 Cadillac or a 2008 Ford. That's right. And it's also crucial that it didn't involve, let's say you had a minivan on this property that was insured with a different policy. He would potentially be able to stack on that as long as he had the minivans. But even if the lawnmower had been involved in the accident, that still would provide, and you still would be willing to pay, uninsured motorist coverage. Yes. This is not an example of an insurer that's just not willing to pay up. No, Your Honor. It's just that you don't want stacking provisions with uncovered vehicles. And 4A and 4B sort of interlock there. The Rupert case gives you permission to do it, and then you have the two provisions that interlock. And include an express anti-stacking provision for Class 2. But that seems to be the way it goes. This is not an example, as I understand it, of an insurance company that just is digging in its heels. It didn't seem that way to me. Because you're willing to do two things. Number one, you're willing to stack if it were a covered vehicle. And number two, even with an uncovered vehicle, you're willing to pay uninsured motorist coverage. That's right. So this isn't that big, bad recalcitrant. Because you're willing to do several things to make good on the policy. That's right, Your Honor. And I think if we were to take the position that a Class 2 isn't even entitled to portability, that would be in contribution to the statute in our policy provisions. That's not what we're saying. We have tendered $150,000 in benefits, which represent the portability benefits on one vehicle. So we're treating them as a Class 2. So we agree that he doesn't fall within 4A1. The panel has no further questions, have you? We appreciate very much your argument. Thank you so much. Thank you, Your Honor. All right. Mr. Wilkelio, you have some rebuttal time, sir. Thank you, Your Honor. Respectfully, Your Honor, Carrier didn't make those payments out of the goodness of their heart. The insured paid a premium. He paid a premium for two separate vehicles. Judge Rushing asked me about the law. And the courts of South Carolina have been very clear. And I'm reading from page 13 of my brief. Stacking of additional coverage for which insured contracted is permitted unless limited by statute or policy provision. That's Rupey from 1998, Jackson in 1986, Beaufort County School District v. United National in 2011, the Court of Appeals, State Farm v. Wyndham in 2020, courting Rupey. Rupey, this court met in 2023 in MIMS v. USAA. There is a presumption that when you pay the premium, you're entitled to the coverage, absent a clear and unambiguous limitation. This court, in order to find that there is not stacking, must find that 4B is such a clear and unambiguous limitation. 4B reads, no limit of liability is increased by the number of automobiles shown in the declarations, except as in 4A. 4A begins with exactly the declarations of coverage of 100 in bodily injury and 50 on each of two vehicles that the insured paid the premium for. Now, this court may find, no, that's not the law. South Carolina law is not that there's a presumption. Judge Wilkson points to South Carolina's minimum requirement that if you have a covered vehicle in the accident, you can stack and the carrier can't prohibit it, and you don't have that minimum required if you don't. And that's actually not the minimum. That's also the maximum. But that's not South Carolina law. That would be a reversal of the pronouncement from the South Carolina courts for decades. This court can then only conclude, in light of South Carolina law, that that provision, 4B, is explicit and unambiguous in that it prohibits stacking, absent the four sections and however. It doesn't. No limit of liability is increased. That's an explicit and unambiguous exclusion of stacking? I understand the court's intuitions about when a person who pays a premium should be entitled to stack. That's not what South Carolina law's presumption is, and that's not what the insured paid the premium for. With that, I conclude my arguments, unless there's further questions from the court. Jasmine, do you have a question? I just want to confirm, when you talk about presumption, the best case or language that you pointed out was the permitted language from the Rupee decision? Yes, Your Honor. Well, Jackson says, stacking is generally permitted unless limited by statutory policy provision. Generally stacking is an additional coverage which ensures this contract is permitted unless limited by statutory policy. Permitted is the phrase they use. But remember, that's taken also in hand with South Carolina's law that has been explicit that we read policy strictly and we read exclusions and limitations strictly. Thank you, Your Honor. Jasmine, do you have any questions? All right, we thank you. We'll come down and re-counsel and move into our final case. Thank you.
judges: J. Harvie Wilkinson III, Allison J. Rushing, Jasmine Hyejung Yoon